**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAISY ALVAREZ, | |
| Plaintiff | CIVIL ACTION NO. 1:16-CV-00707 |
| v. | |
| NANCY A. BERRYHILL,[1] | (MEHALCHICK, M.J.) |
| Acting Commissioner of Social Security | |
| Defendant | |

**MEMORANDUM OPINION**

This is an action brought under Section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. §405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Daisy Alvarez's ("Ms. Alvarez's") claim supplemental security income under Title XVI of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 15; Doc. 16).

Ms. Alvarez, a high school educated former day care worker, sought benefits under the Social Security Act at age thirty-five after an automobile accident resulted in lasting physical injuries and left her mentally traumatized. She alleges that the Commissioner's final decision

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. §405(g), Acting Commissioner Nancy A. Berryhill is automatically substituted as the named defendant in place of the former Commissioner of Social Security.

denying her claim is not supported by substantial evidence because the Commissioner failed to provide evidence about the existence of a significant number of jobs in the national economy that Ms. Alvarez could perform. The Court finds considerable merit in Ms. Alvarez's argument. The 2,077 jobs identified in this case fall below the threshold of what national statistics constitute a "significant" number. As such, the Court is compelled to conclude that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision denying Ms. Alvarez's application for benefits shall be VACATED and this case shall be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. §405(g).

## I.     PROCEDURAL HISTORY

On June 6, 2012, Ms. Alvarez protectively filed a Title XVI application for supplemental security income alleging a disability onset date of February 14, 2012, due to the following conditions: depression, anxiety, back pain, scoliosis, post-surgical shoulder impingement pain, carpal tunnel, right knee issues, polyarthritis, high blood pressure, and hypothyroidism. (Admin. Tr. 206; Doc. 9-6 p. 16).

On November 9, 2012, Ms. Alvarez's application for benefits was denied at the initial level of administrative review. During the initial review of Ms. Alvarez's claim, the disability examiner found that Ms. Alvarez had severe impairments due to osteoarthritis, affective disorders, and anxiety disorders. (Admin. Tr. 82; Doc. 9-3 p. 7). The disability examiner concluded that Ms. Alvarez's impairments did not prevent Ms. Alvarez from engaging in a range of unskilled light work, and concluded that Ms. Alvarez could engage in other work that exists in significant numbers in the national economy. (Admin. Tr. 88; Doc. 9-3 p. 13).

On December 11, 2012, Ms. Alvarez filed a written request for an administrative hearing. On January 23, 2014, Ms. Alvarez appeared and testified during a video hearing before Administrative Law Judge John P. Ramos ("ALJ"). Ms. Alvarez appeared in Binghamton, New York, and the ALJ presided from Syracuse, New York. Ms. Alvarez was represented by counsel throughout the proceedings. After it became apparent that additional records were necessary, the ALJ adjourned the hearing until those records were available. A second supplemental hearing was held on June 3, 2014. Once again, Ms. Alvarez appeared and testified with the assistance of counsel. In addition, impartial vocational expert Linda N. Vause ("VE Vause") appeared and testified.

On June 13, 2014, the ALJ denied Ms. Alvarez's claim in a written decision. The ALJ concluded that Ms. Alvarez was 'not disabled' under the Social Security Act because she retained the capacity to engage in a range of unskilled light work that did not preclude her from engaging in other work that exists in significant numbers in the national economy. The ALJ's determination is supported by VE Vause's testimony that Ms. Alvarez could engage in work as a Chaperone (DOT #352.667-014), and that this occupation is represented by approximately 2,077 jobs in the national economy.[2]

---

[2] The terms "occupation" and "job" are often confused in the context of Social Security appeals. In this opinion, the term "occupation" refers to a trade or line of work and the term "job" refers to an individual position of paid employment.

Upon receipt of the ALJ's decision, Ms. Alvarez sought further review from the Appeals Council of the Office of Disability Adjudication and Review. On March 25, 2016, the Appeals Council denied Ms. Alvarez's request for review.

On April 27, 2016, Ms. Alvarez initiated this action by filing a complaint. In her complaint, Ms. Alvarez alleges that the conclusions reached by the ALJ in the final decision denying Ms. Alvarez's claims are not supported by substantial evidence and are contrary to the law and regulations. (Doc. 1 ¶7). As relief, Ms. Alvarez requests that she be awarded benefits, or in the alternative, that this matter be remanded to the Commissioner to conduct a new administrative hearing.

On July 7, 2016, the Commissioner filed her answer. (Doc. 8). In her response, the Commissioner maintains that the ALJ's final decision denying Ms. Alvarez's claim was made in accordance with the law and regulations and is supported by substantial evidence.

This matter has been fully briefed by the parties and is ripe for resolution. (Doc. 10); (Doc. 11); (Doc. 12).

## II.    STANDARD OF REVIEW

To receive benefits under Title XVI of the Social Security Act, the claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). To satisfy this requirement, the claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or

any other substantial gainful activity that exists in significant number in the national economy. 42 U.S.C. §1382c(a)(3)(B).

In evaluating the question of whether a claimant is under a disability as it is defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether the claimant is able to do his past relevant work, considering his current residual functional capacity ("RFC");[3] and, (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his current RFC, age, education, and work experience. 20 C.F.R. §416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him from doing his past relevant work. 20 C.F.R. §416.912(a)(effective June 12, 2014, through Apr. 19, 2015).[4] Once the

---

[3] A claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. §416.945(a)(1); *see also* *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Before the ALJ goes from step three to step four, he or she assesses the claimant's RFC. 20 C.F.R. §416.920(a)(4). The RFC is used at step four and step five to evaluate the claimant's case. *Id.*

[4] The version of 20 C.F.R. §404.1512(effective June 12, 2014, through Apr. 19, 2015) in effect on the date the ALJ issued his decision in this case has been amended during the pendency of this action. Section (a) of this regulation remains virtually identical, *see* 20 C.F.R. §416.912(a)(effective Mar. 27, 2017), and section F has been redesignated as section (b)(3), *see* 20 C.F.R. §416.912(b)(3)(effective Mar. 27, 2017). In this opinion, the Court cites to the regulations relied on by the ALJ when he evaluated Ms. Alvarez's claim. The application of the new version of these provisions, however, would not affect the outcome in this case.

claimant has established at step four that he cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his RFC, age, education, and past work experience. 20 C.F.R. §416.912(f)(effective June 12, 2014, through Apr. 19, 2015).

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200(3d Cir. 2008); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536(M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question

before this Court, therefore, is not whether Ms. Alvarez is disabled, but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at \*1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca*, 901 F.Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

## III.    THE ALJ'S DECISION

In his June 2014 decision denying Ms. Alvarez's claim, the ALJ assessed Ms. Alvarez's allegations at each step of the sequential evaluation process. At step one the ALJ found that Ms. Alvarez did not engage in substantial gainful activity between June 6, 2012, and June 13, 2014 (the "relevant period"). (Admin. Tr. 15; Doc. 9-2 p. 16). At step two the ALJ found that Ms. Alvarez had the following medically determinable, severe impairments: scoliosis, right-sided carpal tunnel syndrome, right shoulder impingement, history of right knee injury, history of headaches and fainting spells, major depressive disorder, and post-traumatic stress disorder. (Admin. Tr. 15-17; Doc. 9-2 pp. 16-18). The ALJ also found that the following impairments were medically determinable but non-severe: obesity, diabetes, palpitations, left arm numbness, left hip tendonitis, thoracic strain, fibromyalgia, myalgia and myositis, hypertension, hypothyroidism, iron-deficiency anemia, leukocytosis, thalassemia trait, fatigue, insomnia, nausea, abdominal pain, fatty liver, ovarian cysts, urinary tract infections, chest pain, asthma,

bronchitis, sinusitis, earaches, conjunctivitis, dermatitis, rashes/shingles, and an allergic skin reaction to Cipro. *Id.* At step three the ALJ found that Ms. Alvarez did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 effective on the date the ALJ issued his decision. (Admin. Tr. 17-19; Doc. 9-2 pp. 18-20).

Between steps three and four, the ALJ evaluated Ms. Alvarez's RFC. In doing so he considered opinion evidence from Certified Physician's Assistant Franklin DeJesse ("PA-C DeJesse"), nonexamining source Feroz Sheikh ("Dr. Sheikh"), treating source Susan Jackson ("Dr. Jackson"), treating neurologist Paul McCabe ("Dr. McCabe"), and nontreating source Jay Willner ("Dr. Willner"), about the impact of Ms. Alvarez's physical impairments. The ALJ considered opinion evidence from nontreating psychologist Victoria Stewart ("Dr. Stewart"), nonexamining psychologist Melissa Diorio ("Dr. Diorio"), and treating psychologist Roger Smothers ("Dr. Smothers") about the functional impact of Ms. Alvarez's mental impairments.

On January 28, 2010, PA-C DeJesse completed a medical assessment form for the Pennsylvania Department of Public Welfare. (Admin. Tr. 327; Doc. 9-7 p. 88). PA-C DeJesse assessed that Ms. Alvarez would be temporarily disabled for a period of less than twelve months due to the conditions of cervical radiculitis and lumbar degenerative disc disease. PA-C DeJesse assessed that this period of temporary disability would last from January 19, 2010, through March 31, 2010.

On May 19, 2010, PA-C DeJesse completed a second medical assessment form for the Pennsylvania Department of Public Welfare. (Admin. Tr. 328-330; Doc. 9-7 pp. 89-91). PA-C DeJesse assessed that Ms. Alvarez would be temporarily incapacitated due to the conditions of

traumatic nerve impingement of the right shoulder, hypothyroidism, and depression. PA-C DeJesse assessed that Ms. Alvarez's temporary incapacity would last from May 19, 2010, through May 19, 2011.

On May 3, 2012, PA-C DeJesse completed a third medical assessment form for the Pennsylvania Department of Public Welfare. (Admin. Tr. 331-332; Doc. 9-7 pp. 92-93). PA-C DeJesse assessed that Ms. Alvarez would be temporarily incapacitated due to mitral regurgitation/palpitations, anxiety, depression, scoliosis, and polyarthritis. PA-C DeJesse assessed that Ms. Alvarez's temporary incapacity would last from May 6, 2012, through May 6, 2013.

On November 18, 2012, Dr. Sheikh assessed Ms. Alvarez's physical RFC after reviewing the medical evidence of record that was available to him. (Admin. Tr. 84-85; Doc. 9-3 pp. 9-10). Dr. Sheikh assessed that Ms. Alvarez could: occasionally lift and/or carry (including upward pulling) twenty pounds; frequently lift and/or carry (including upward pulling) ten pounds; stand and/or walk (with normal breaks) for a total of about six hours per eight-hour workday; and sit (with normal breaks) for a total of about six hours per eight-hour workday. Dr. Sheikh also assessed that Ms. Alvarez has no postural, manipulative, visual, communicative, or environmental limitations.

On April 26, 2013, Dr. Jackson completed a medical assessment form for the Pennsylvania Department of Public Welfare. (Admin. Tr. 324-326; Doc. 9-7 pp. 85-87). Dr. Jackson assessed that Ms. Alvarez's conditions of uncontrolled seizure disorder, anxiety, degenerative disc disease, and scoliosis rendered her temporarily incapacitated. She also

assessed that Ms. Alvarez's temporary incapacitation could be expected to last until May 10, 2014.

On February 11, 2014, Dr. McCabe completed a check-box medical source statement of Ms. Alvarez's physical abilities. (Admin. Tr. 511-516; Doc. 9-9 pp. 2-7). Dr. McCabe did not assess Ms. Alvarez's ability to lift, carry, sit, stand, walk, use of hands or feet, or postural activities. Instead, Dr. McCabe noted that this assessment should be deferred until after Ms. Alvarez was examined by a physiatrist. Dr. McCabe did assess that Ms. Alvarez could tolerate no more than frequent exposure to extreme cold, extreme heat, vibrations, and loud noise. Dr. McCabe also noted that Ms. Alvarez did not have epilepsy, and that there was no evidence of seizures that would render her unable to work. He also assessed that none of the limitations he noted had lasted, or could be expected to last, for twelve consecutive months.

On March 12, 2014, Ms. Alvarez was examined by Dr. Willner after being referred to him by the Bureau of Disability Determination. (Admin. Tr. 598-612; Doc. 9-9 pp. 89-103). Dr. Willner diagnosed scoliosis, right carpal tunnel syndrome, right knee injury, right shoulder impingement, hypertension, diabetes, and asthma. During the examination Dr. Willner observed that Ms. Alvarez appeared to be in no acute distress, walked with a normal gait, could walk on her heels and toes without difficulty, could rise from a chair unassisted and do a full squat, used no assistive device, and had no difficulty getting on or off the exam table. Dr. Willner assessed that Ms. Alvarez could: continuously lift or carry up to one-hundred pounds; sit, stand or walk up to eight-hours at one time without interruption; sit, stand, or walk a total of eight hours per eight-hour workday; continuously reach, handle, finger, feel, push, and pull with her left hand, but never reach, handle, finger, feel, push or pull with her right hand;

continuously climb, balance, stoop, kneel, crouch, and crawl; tolerate occasional exposure to unprotected heights, moving mechanical parts, or positions that would require her to operate a motor vehicle.

On May 14, 2014, PA-C DeJesse completed a check-box medical source statement. (Admin. Tr. 656-657; Doc. 9-9 pp. 147-148). PA-C DeJesse assessed that Ms. Alvarez could: sit up to four hours per eight-hour workday, stand/walk approximately two-thirds of one hour (forty minutes) per eight-hour workday, and must be permitted to change positions every twenty minutes; and safely lift up to five pounds at a time for no more than a total of three hours per day. PA-C DeJesse also assessed that Ms. Alvarez would be off task ten percent of the day due to her conditions, and would be absent more than four days per month.

On November 2, 2012, Ms. Alvarez was examined by Dr. Stewart after being referred to her for a psychiatric evaluation by the Bureau of Disability Determination. (Admin. Tr. 292-297; Doc. 9-7 pp. 53-28). Dr. Stewart diagnosed major depressive disorder and PTSD. On the day of the evaluation Ms. Alvarez had a global assessment of functioning score of fifty-one. Dr. Stewart opined that Ms. Alvarez's mental impairments impacted her ability to concentrate to the extent that Ms. Alvarez would have slight difficulty understanding, remembering, and carrying out detailed instructions. Dr. Stewart also assessed that Ms. Alvarez's ability to drive is impaired by her PTSD, a condition that developed after Ms. Alvarez was injured in an automobile accident.

On November 6, 2012, Dr. Diorio completed a psychiatric review technique ("PRT") form and mental RFC assessment after reviewing the records available on that date. (Admin. Tr. 82-83, 85-86; Doc. 9-3 pp. 7-8, 10-11). Dr. Diorio assessed that Ms. Alvarez's mental

impairments resulted in a mild restriction of activities of daily living, mild difficulties

maintaining social functioning, moderate difficulties maintaining concentration, persistence, or

pace, and no repeated episodes of decompensation. In her mental RFC assessment, Dr. Diorio

assessed that Ms. Alvarez would be capable of working a regular work schedule at a consistent

pace, making simple decisions, carrying out very short and simple instructions, maintaining

regular attendance, and being punctual. Dr. Diorio concluded that Ms. Alvarez would be

capable of meeting the basic mental demands of competitive work on a sustained basis despite

her mental impairments.

On February 9, 2013, Dr. Smothers wrote a letter, in which he noted that Ms. Alvarez

continued to experience panic and anxiety surrounding motor vehicles. (Admin. Tr. 541-542;

Doc. 9-9 pp. 32-33). He opined that, although Ms. Alvarez might be capable of working, she

would have significant difficulty getting to any work location that required her to ride in a

motor vehicle.

Based on these opinions, the ALJ found that Ms. Alvarez had the RFC to perform light

work as defined in 20 C.F.R. §416.967(b), as follows:

> the claimant is able to lift and/or carry twenty pounds occasionally and ten
> pounds frequently, stand and/or walk for six hours in an eight-hour workday,
> and sit for six hours in an eight-hour workday. The claimant cannot use her
> dominant right upper extremity and right hand for pushing, pulling, reaching,
> fingering, and handling. The claimant must avoid working at unprotected
> heights or in close proximity to dangerous machinery and moving mechanical
> parts, and the claimant cannot climb ladders, ropes, and scaffolds. Additionally,
> the claimant retains the ability to understand and follow simple instructions and
> directions, perform simple tasks with supervision and independently, maintain
> attention and concentration for simple tasks, regularly attend to a routine and
> maintain a schedule, relate to and interact with others in order to carry out
> simple tasks, and handle reasonable levels of simple work-related stress in that
> she is able to make decisions directly related to the performance of simple work

and handle usual workplace changes and interactions associated with simple work.

(Admin. Tr. 20; Doc. 9-2 p. 21).

At step four, the ALJ found that, based on the above-quoted RFC, Ms. Alvarez was unable to perform her past relevant work as a day care worker during the relevant period. (Admin. Tr. 24; Doc. 9-2 p. 25). The ALJ explained that his findings were based on VE Vause's testimony that the occupation of daycare worker is considered "semi-skilled" under the Commissioner's regulations, and that an individual with the RFC described by the ALJ could not engage in this type of work. (Admin. Tr. 24; Doc. 9-2 p. 25); (Admin. Tr. 72-73; Doc. 9-2 pp. 73-74).

At step five, the ALJ found that, based on the above quoted RFC, and considering Ms. Alvarez's age (younger individual), education (high school or above), and work experience, jobs existed in significant numbers in the national economy that Ms. Alvarez could perform. (Admin. Tr. 25; Doc. 9-2 p. 26). The ALJ explained that he relied on testimony by VE Vause that an individual with the same functional capacity and vocational characteristics as the claimant could engage in the occupation of "chaperone" and that this occupation existed in approximately 2,077 jobs in the national economy. *Id.* The Court notes, however, that the determination of whether the figure of 2,077 jobs was "significant" was made by the ALJ. VE Vause did not comment on whether this figure was "significant."

## IV. ANALYSIS

At step five of the sequential evaluation process, the Commissioner "must provide evidence about the existence of work in the national economy that [the claimant] can do" given the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.912(f)(effective June

12, 2014, through Apr. 19, 2015).[5] "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet with [his or her] physical or mental abilities and vocational qualifications." 20 C.F.R. §416.966(b). An ALJ may support this conclusion by citing occupations within which there are a significant number of jobs to which the claimant could adjust, or by citing to a Social Security Ruling indicating that the claimant's nonexertional limitations do not substantially erode the unskilled occupational base represented by the "grid rule" in the medical-vocational guidelines codified at 20 C.F.R. Part 404, Subpart P, Appendix 2. Social Security Administration, Programs Operations Manual System DI 25025.030; *see also Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000)(holding that the ALJ must rely on evidence such as vocational testimony or similar evidence such as a learned treatise to support a decision that a claimant with a combination of exertional and nonexertional impairments is not disabled); *Allen v. Barnhart*, 417 F.3d 396, 407-408 (3d Cir. 2005)(permitting the Social Security Administration to rely on a social security ruling to support a determination at step five only where the ruling is "crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus the occupational base").

The Commissioner's regulations explain that isolated jobs that exist only in very limited numbers in relatively few locations outside the region where the claimant lives are not considered as "work in the national economy" and a claimant will not be denied benefits on the

---

[5] On March 27, 2017, 20 C.F.R. §416.912(f) was redesignated as 20 C.F.R. §416.912(b)(3).

basis of the existence of those kinds of jobs. 20 C.F.R. §416.966(b). However, it does not matter whether work exists in the immediate area where the claimant lives, whether a specific job exists for the claimant, or whether the claimant would be hired if he or she applied for work. 20 C.F.R. §416.966(a). The Social Security Administration's Program Operations Manual System ("POMS") provides that when an ALJ makes a step five determination of 'not disabled' using a grid rule as a framework, the ALJ must cite three occupations that are examples of work the claimant could do, but may cite fewer than three occupations "when it is clear that jobs exist in significant numbers within fewer than three occupation(s)." Social Security Administration, POMS DI 25025.030 *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425025030 (last visited Apr. 17, 2017).

The Courts disagree not only on the number of jobs that are "significant" but also on how to approach this issue. While the Sixth Circuit has ultimately concluded that such a determination is best left to the trial judge's – the ALJ's – common sense, *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988)(articulating a multi-factor test that the ALJ must consider when determining whether the number of jobs available is "significant"), other courts, including the Third Circuit, have either implicitly or explicitly found that this issue is appropriate for court review. *Craigie v. Bowen,* 835 F.2d 56, 58 (3d Cir. 1987)(affirming after finding that 200 jobs in the regional economy was significant); *Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir. 1988)(finding that 500 jobs in the region was a significant number); *Beltran v. Astrue,* 700 F.3d 386, 390 (9th Cir. 2012)(remanding because 1,680 jobs in the national economy was not a significant number).

The Social Security Administration has not set any threshold as to what constitutes a "significant number" of jobs. Similarly, the courts that find this issue reviewable are also disinclined to set a bright line rule defining how many jobs constitute a "significant number" of jobs; many courts have effectively done so, however, by relying on statistics that have been found "significant" or "not significant" in other cases.

During the second administrative hearing, VE Vause identified one occupation – Chaperone (DOT #352.667-014) – and testified that there were approximately 2,077 "chaperone" jobs in the national economy. Ms. Alvarez argues that 2,077 jobs is not a "significant number" of jobs. (Doc. 10 pp. 10-11).

In response, the Commissioner asserts that "[c]ourts have generally held that which constitutes a significant number is fairly minimal." (Doc. 11 p. 27). In support of her assertion, she relies on *Craigie,* and *Ahmad v. Comm'r of Soc. Sec.*, 531 F.App'x 275, 278 (3d Cir. 2013). In *Craigie*, the Third Circuit found that VE testimony that 200 jobs existed in the *regional* economy that the claimant could perform was a "clear indication that there is exists in the national economy other substantial gainful work" that the claimant could perform. 835 F.2d at 58. Similarly, in *Ahmad*, the Third Circuit found 569 jobs available in the *regional* economy was a significant number of jobs. 531 F.App'x 278.

Both *Craigie* and *Ahmad* contemplate regional statistics, whereas in this matter, VE Vause provided only national statistics. These cases and the number of jobs the regional economy relied on by the ALJ are of little use in this case. The Social Security Administration does not define the term "region," or identify how many "regions" exist in the national economy. As such, there is no way to extrapolate, based on the regional figures provided in

*Craigie* and *Ahmad*, whether 2,077 jobs in the national economy is a "significant" figure when compared to regional statistics.

Ms. Alvarez relies on *Leonard v. Heckler*, 582 F. Supp. 389 (M.D.Pa. 1983). In *Leonard*, the ALJ supported his step five determination that the claimant could engage in work that exists in significant numbers by relying on VE testimony that the claimant could engage in an occupation that existed in between 4,000 and 5,000 jobs in the national economy. *Id.* at 391. The Court ultimately remanded this case for two reasons. First, the Court found that the ALJ's hypothetical question was not specific enough on the issue of how much exposure to pulmonary irritants the claimant could tolerate. Second, the Court concluded that "benefits cannot be denied on the ground that 4,000 to 5,000 jobs exist . . . ." *Id.* at 392. Although the Commissioner attempts to distinguish this case from *Leonard*, the Court is unpersuaded. Furthermore, the Commissioner has failed to identify any case where any court has found that a national statistic of 2,077 jobs or less has been upheld as "significant."

Accordingly, the Court finds that because the Commissioner has failed to meet her burden of identifying a significant number of jobs that exist in the national economy that Ms. Alvarez can perform, her final decision denying Ms. Alvarez's claim is not supported by substantial evidence. Because the Court has found a clear basis for remand in this case, it need not address Ms. Alvarez's remaining arguments. To the extent that any error exists, it may be remedied on remand.

## V. CONCLUSION

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence. This matter shall be remanded as follows:

(1)     The Commissioner's final decision denying Daisy Alvarez's Title XVI application for supplemental security income shall be VACATED, and this case shall be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. §405(g);

(2)     Final judgment shall be issued in favor of Daisy Alvarez and against the Acting Commissioner of Social Security; and,

(3)     The Clerk of Court shall close this case.

**Dated: May 3, 2017**                        *s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States Magistrate Judge**